UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHANELLE DAVIS,

               Plaintiff,

       v.                             **DECISION AND ORDER**
                                       18-CV-6519S

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

      1.      Plaintiff Shanelle Davis brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her applications with the Social Security Administration on January 7, 2015.  Plaintiff's alleged disability beginning October 31, 2014, due to unspecified depressive disorder; generalized anxiety; unspecified anxiety disorder; social anxiety; obsessive-compulsive disorder ("OCD"); and post-traumatic stress disorder ("PTSD").  (R.[1] at 13.)  Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

      3.      On May 9, 2017, ALJ Michael W. Devlin held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Joseph Atkinson appeared and testified. (R. at 31-66.)  At the time of the hearing, Plaintiff was 45 years old with a 11th grade education and past work experience as a sandwich maker.

---

[1]Citations to the underlying administrative record are designated as "R."

4.     The ALJ considered the case *de novo* and, on August 16, 2017, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[2]  (Docket No. 1.)

5.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 13, 16.)  Plaintiff filed a response on June 11, 2019, stating that no reply was necessary (Docket No. 17, at 1), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is **denied,** and Defendant's motion is **granted**.

6.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[2]The ALJ's August 16, 2017, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the Plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-142 (1987).

9.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the

>fourth inquiry is whether, despite the claimant's severe
>impairment, [s]he has the residual functional capacity to
>perform [her] past work.  Finally, if the claimant is unable to
>perform [her] past work, the [Commissioner] then determines
>whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.     Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Bowen, supra,

482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step

is divided into two parts.  First, the Commissioner must assess the claimant's job

qualifications by considering her physical ability, age, education, and work experience.

Second, the Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform.  See 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460

(1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth

above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful

activity since October 31, 2014, the alleged onset date.  (R. at 13.)  At step two, the ALJ

found that Plaintiff has the following severe impairment: unspecified depressive disorder;

generalized anxiety disorder; unspecified anxiety disorder; social anxiety; OCD; and

PTSD.  Id.  At step three, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals any impairment(s) listed in

20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [Plaintiff] can understand, remember, and carry out simple instructions and tasks and occasionally interact with co-workers and supervisors; but have little to no contact with the general public.  [Plaintiff] is able to work in a low[-]stress work environment (*i.e.* no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine and processes, etc.); and [is] able to consistently maintain concentration and focus for up to two hours at a time.

(R. at 15.)

13.     At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (R. at 19.)  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  The ALJ posed hypotheticals to the vocational expert of a claimant with Plaintiff's RFC, age, education, and work history.  The expert opined that the claimant could perform such occupations as laundry worker (medium exertion work), kitchen helper (medium work), or mail clerk (light work). (R. at 19-20.)  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 20-21.)

14.     Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed to weigh properly mental health opinion evidence. Specifically, Plaintiff argues that in giving the opinion of consultative examiner Dr. Yu-Ying Lin only "some weight," (R. at 17, 287-91) the ALJ "discard[ed] Dr. Lin's opinion … and improperly rel[ied] more heavily on the state agency review consultant's opinion" without providing sufficient reasons for rejecting Dr. Lin's opinion, thus "clearly substituting his own interpretation of the raw medical findings for Dr. Lin's expert

5

interpretation of the same." (No. 13-1 at 12, 13, 12-16.) Defendant Commissioner counters that substantial evidence supports the ALJ's RFC finding. (No. 16-1 at 7-11.) As discussed below, Plaintiff's argument is unavailing.

15.     A Plaintiff's RFC, both mentally and physically, is her "'maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis.'" Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). When making an RFC assessment, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Malta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). All "[m]edical opinions, regardless of the source are evaluated considering several factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c)." House v. Astrue, No. 5:11-CV-915(GLS), 2013 WL 422058, *3 (N.D.N.Y. Feb. 1, 2013).

16.     Plaintiff argues that the ALJ formulated the RFC based upon the ALJ's lay opinion. (No. 13-1 at 12.) She contends that the ALJ erred in giving only some weight to Dr. Lin's opinion, while that opinion was accepted by state agency consultant Dr. M. Marks and is consistent with the findings of treating MHC Ellie Law. (Id.) Had Dr. Lin's opinion been given appropriate weight, Plaintiff's moderate limitations in a variety of areas opined by Dr. Lin "could have seriously eroded Plaintiff's occupational base." (Id.)

17.     Dr. Lin examined Plaintiff and diagnosed her with generalized anxiety disorder, unspecified depressive disorder, social anxiety, OCD, and substance abuse in early remission (noting that Plaintiff was in a treatment facility for chemical dependency). (R. at 290, 287.) Plaintiff reported to Dr. Lin that her last job was as a slicer which she had for eight years until she was fired due to her anxiety and arguments with a new boss.

6

She stayed on that job for so long because of the tolerance of her prior supervisors.  (R. at 287.)

18.     The ALJ found that Dr. Lin concluded that Plaintiff's psychiatric symptoms "may significantly interfere with her daily functioning" and that Dr. Lin only found that it was a moderate limitation.  (R. at 17.)  The ALJ then gave only "some weight" to Dr. Lin's opinion because it was not completely supported by clinical findings on examination.  (R. at 17.)

19.     Dr. Marks, however, placed great weight on Dr. Lin's opinion.  (R. at 67, 77.) Dr. Marks also found that Plaintiff had moderate limitations in understanding and remembering detailed instructions; moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace.  (R. at 68, 65, 78, 75, 17.)  Dr. Marks found that Plaintiff's mental impairments were moderate.  (R. at 66, 76, 17.)  Dr. Marks stated that there were no medical sources that found more restrictive limitations for Plaintiff.  (R. at 69, 79.)  Despite these moderate limitations, Dr. Marks concluded that the Medical-Vocational Guidelines would direct a finding that Plaintiff was not disabled.  (R. at 69-70, 79-80.)  The ALJ gave Dr. Marks' opinion significant weight because it was based on the review of the medical record and was generally consistent with that record.  (R. at 17.)

20.     The ALJ also noted treatment by Ellie Law, MS, MHC, who saw Plaintiff from April 18, 2017.  (R. at 17-18, 839.)  Ms. Law also noted Plaintiff had moderate limitations for her ability to maintain attention and concentration for role tasks; capacity to regularly attend to a routine and maintain a schedule; and capacity to perform low stress and simple tasks.  (R. at 17, 842.)  Although not accepted as a medical source, the ALJ

accorded some weight to Ms. Law's findings, accepting them because of her treatment relationship with Plaintiff but recognizing that the treatment was for a brief period (since April 2017 for the May 9, 2017, hearing).  (R. at 18.)

21.    Plaintiff first argues that the ALJ erred in formulating the mental RFC while giving significant weight only to the state agency review opinion, Ransome v. Colvin, 164 F. Supp. 3d 427, 431 (W.D.N.Y. 2016) (Telesca, J.) ("it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient," quotation omitted).  (No. 13-1 at 13.)  She also argues that the ALJ erred in weighing Dr. Lin's opinion as being inconsistent with the record.

22.    The Second Circuit, in Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) held that "the report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."  (No. 16-1 at 8.)  Thus, Plaintiff's reliance on Ransome and its contrary holding is wrong.  (Id. at 8-9, 9 n.3.)  The facts in Ransome are distinguishable.  The state agency consultant in Ransome speculated about the effect of that Plaintiff's former drug abuse and alcoholism, leading to the conclusion that the ALJ erred in giving great weight to that opinion, Ransome, supra, 164 F. Supp. 3d at 432.

23.    Plaintiff argues that the ALJ's grant of "some weight" to Dr. Lin's opinion constitutes a "rejection of Dr. Lin's opinion [that] reflect[s] a total failure to apply the regulatory factors" to the ALJ's evaluation of the opinion.  Plaintiff further argues that "[i]n rejecting Dr. Lin's assessment this way, the ALJ was clearly substituting his own

interpretation of the raw medical findings for Dr. Lin's expert interpretation of the same."
(No. 13-1 at 14, 13-14.)

24.     The ALJ's assessment of Dr. Lin's opinion here is the product of his lay interpretation, as Plaintiff argues (No. 13-1 at 13).   The issue, then, is whether that assessment is harmful.   The record here is that Plaintiff has moderate psychological difficulties but she still able to perform work.   Dr. Lin did not find any limitations that preclude work and Dr. Marks, who gave great weight to Dr. Lin's findings, concluded that Plaintiff would not be disabled under the Medical-Vocational Grid.

> Although the ALJ should consider "all medical opinions received regarding the claimant" (see Spielberg v. Barnhart, 367 F.Supp.2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)), there "is no requirement that the [ALJ] accept the opinion of a consultative examiner concerning a claimant's limitations" (Pellam v. Astrue, 508 F. App'x 87, 89-90 (2d Cir. 2013)). Rather, as with "recognized medical sources, 'the amount of weight to give [other source] opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole.'" Fitzwater [v. Berryhill], No. 16CV696], 2017 WL 4563899 at *5 [(W.D.N.Y. Oct. 13, 2017) (Telesca, J.)] (alteration omitted) (quoting Conlin ex rel. N.T.C.B. v. Colvin, 111 F.Supp.3d 376, 386 (W.D.N.Y. 2015) [(Wolford, J.)]).

Thomas v. Berryhill, 337 F. Supp. 3d 235, 241 (W.D.N.Y. 2018) (Larimer, J.).

25.     While Plaintiff next argues that the ALJ failed to apply the regulatory factors, 20 C.F.R. §§ 404.1527(c), 416.927(c), in rejecting Dr. Lin's opinion (No. 13-1 at 14), most of those factors diminish Dr. Lin's opinion.   Dr. Lin had no treatment relationship with Plaintiff and only saw her for the consultative examination, which the ALJ acknowledged. (R. at 17; see No. 16-1 at 11.)   The ALJ (erroneously) found that Dr. Lin's opinion was inconsistent with the record.   Dr. Lin's area of expertise is psychology which the ALJ noted.   (R. at 17; No. 16-1 at 11.)   "An ALJ does not have to explicitly walk through these

factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. Hall v. Colvin, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (Wolford, J.) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)).

26.     Plaintiff makes the point that the ALJ should not have relied almost exclusively on state agency reviewer Dr. Marks' opinion.  Dr. Marks gave great weight to Dr. Lin's opinion in assessing the medical record.  What is unclear, however, is the inconsistency between the opinions of Dr. Lin and Dr. Marks; both found Plaintiff had moderate limitations.  Dr. Marks concluded that Plaintiff could not meet the guidelines for disability while Dr. Lin makes no such finding.

27.     As Defendant notes, the ALJ gave weight to the portions of Dr. Lin's opinion that were consistent with Dr. Marks' (No. 16-1 at 7-8).  The only difference is Dr. Lin's statement that Plaintiff's impairments "are consistent with psychiatric problems and this may significantly interfere with the claimant's ability to function on a daily basis" (R. at 290) but Dr. Lin still concluded that Plaintiff had moderate limitations (id.).  The mental RFC incorporated all of Dr. Lin's specific functional limitations.  (R. at 16, 290.  See No. 16-1 at 8.)

28.     Further, Plaintiff's medical record after her 2015 examination by Dr. Lin showed that her mental condition was controlled by medication, that she successfully completed her therapy goals, and did not exhibit any significant findings or limitations on examination.  (R. at 501, 570, 799; No. 16-1 at 10.)

29.     Notably, Plaintiff does not contend that she is incapable of functioning at the RFC level determined by the ALJ and she does not argue that it does not sufficiently

incorporate the functional limitations that Dr. Lin identified.  Instead, Plaintiff seems to argue that remand is warranted solely that the ALJ did not wholly adopt Dr. Lin's conjecture that "[t]he results of the examination appear to be consistent with psychiatric problems and this **may** significantly interfere with [Plaintiff's] ability to function on a daily basis."  (R. at 290 (emphasis added).)  This argument fails.

30.    Nothing indicates that the ALJ "discard[ed]" or "reject[ed]" Dr. Lin's opinion, as Plaintiff contends.  There is no indication that the ALJ undertook to substitute his own lay interpretation of raw medical data for competent medical opinion.  Instead, the ALJ incorporated each functional limitation that Dr. Lin found into Plaintiff's RFC determination.

31.    Dr. Lin opined that Plaintiff is moderately limited in making appropriate decisions and relating adequately with others.  (R. at 290.)  Accordingly, the RFC limited Plaintiff to "occasional[] interact[ion] with co-workers and supervisors but … little to no contact with the general public."  (R. at 15.)

32.    Dr. Lin also opined that Plaintiff is moderately limited in appropriately dealing with stress, so the ALJ limited her to working "in a low[-]stress environment (i.e. no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine and processes, etc." Id.  Dr. Lin also opined that Plaintiff "is moderately limited in maintaining attention and concentration and maintaining a regular schedule."  (R. at 290.)  The ALJ accounted for this functional limitation in the RFC by noting that Plaintiff is "able to consistently maintain concentration and focus for up to two hours at a time."  (R. at 15.)

33.     Plaintiff has not argued that the ALJ's RFC determination fails to sufficiently account for the specific limitations that Dr. Lin found in any way.  Cf. Jiminez v. Colvin, No. 16CV6350, 2018 WL 459301, at *3 (W.D.N.Y. Jan. 18, 2018) (Larimer, J.) ("District courts in this circuit have held that an RFC which includes the ability to concentrate for up to two hours at a time, without or without the additional limitations to simple tasks and/or a low-stress environment that the ALJ included here, is sufficient to account for moderate limitations in attention and concentration.") (collecting cases) (emphasis in original).

34.     For the foregoing reasons, this Court finds that the ALJ had substantial evidence to determine that plaintiff was not disabled.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is **DENIED**.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 16) is **GRANTED**.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:       April 27, 2020
             Buffalo, New York


                                    s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Judge